## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JENNIFER CLARK, )<br><br>Plaintiff, )<br><br>v. )<br><br>CANADIAN COUNTY ex rel. )<br>THE BOARD OF COUNTY )<br>COMMISSIONERS, *et al.*, )<br><br>Defendants. ) | Case No. CIV-24-1241-SLP<br>(District Court of Canadian<br>County, Case No. CJ-2024-328) |

## **O R D E R**

Before the Court is the Motion to Dismiss [Doc. No. 12] filed by Defendants Board of County Commissioners of Canadian County, Oklahoma (Canadian County BOCC) and Sheriff Chris West, individually and in his official capacity as Sheriff of Canadian County. Plaintiff Jennifer Clark has responded [Doc. No. 28], and Defendants have replied [Doc. No. 32]. Also before the Court is Defendant David Loman's Motion to Dismiss [Doc. No. 13], to which Ms. Clark has responded [Doc. No. 29] and Mr. Loman has replied [Doc. No. 33]. Accordingly, both matters are fully briefed and ready for determination.

## I.    **Introduction**

Ms. Clark brings this action based on an alleged sexual assault by Mr. Loman, a former Sheriff's Deputy, while transporting her to the Canadian County Jail on August 31, 2021. *See generally* Am. Compl. [Doc. No. 11]. Ms. Clark filed this action in the District Court of Canadian County, State of Oklahoma, but it was removed to this Court on November 27, 2024. *See* Corrected Pet. [Doc. No. 1-7]; *see also* Notice of Removal [Doc.

No. 1].  The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Ms. Clark brings claims pursuant to federal law: 42 U.S.C. § 1983 and 18 U.S.C. § 1591(a).

Ms. Clark names Sheriff West and Mr. Loman in their official and individual capacities.  Am. Compl. [Doc. No. 11] at 1.  She brings § 1983 claims against Mr. Loman for "Excessive Force/Bodily Integrity" and substantive due process under the Fourteenth Amendment.[1]  *Id.* at 30-34.  She asserts claims against both Mr. Loman and Sheriff West for violation of equal protection, violation of the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1591, and sexual assault and battery under Oklahoma criminal statutes, 21 Okla. Stat. §§ 888, 1029, 1111, and 1123.  *Id.* at 35-46.  Ms. Clark also brings a claim for supervisory liability against Sheriff West, and a municipal liability claim against Sheriff West and Canadian County BOCC.  *Id.* at 38-42.[2]

Sheriff West and Canadian County BOCC move for dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  They contend Ms. Clark's § 1983 claims are barred by the applicable statute of limitations and qualified immunity, and that the claims against Canadian County BOCC are redundant to those against Sheriff West in his official capacity.  *See* Mot. [Doc No. 12] at 7-17.  They further contend the Court lacks jurisdiction over the state law claims because Ms. Clark failed to comply with the notice requirements of the Oklahoma Governmental Tort Claims Act (GTCA).  *Id.* at 18-19.

---

[1] Ms. Clark states that she brings her claim against Mr. Loman under the Eighth and Fourteenth Amendments alternatively because there is a split in authority on whether a person detained on probation violations is considered a pretrial detainee triggering Fourteenth Amendment analysis or a convicted inmate triggering Eighth Amendment analysis.  *Id.* ¶ 215.

[2] Ms. Clark does not identify which claims are brought against Sheriff West and/or Mr. Loman in their individual capacities versus their official capacities.  *See id.*

Sheriff West alternatively asserts that the state law claims against him in his official capacity are barred by sovereign immunity, and Ms. Clark fails to state a plausible claim against him in his individual capacity. *Id.* at 20-28.  Finally, they argue that Ms. Clark has failed to state a claim for violation of the TVPRA.  *Id.* at 28-31.

Mr. Loman likewise moves for dismissal of all claims asserted against him.  *See* Mot. [Doc. No. 13].  He similarly asserts that Ms. Clark's § 1983 claims are time-barred and that she fails to plausibly allege a violation of the TVPRA.  *Id.* at 4-6.  He further asserts that Ms. Clark's claim for assault and battery under Oklahoma criminal statutes is time-barred.  *Id.* at 6.

## II.    <u>Governing Standard</u>

To withstand a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A facially plausible complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *S.E.C. v. Shields*, 744 F.3d 633, 640 (10th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).  While the complaint need not contain "detailed factual allegations," it must include "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action" to avoid dismissal. *Twombly*, 550 U.S. at 555.  The Court views the allegations in the light most favorable to the non-moving party and draws all reasonable inferences in the non-moving party's favor. *Brown v. City of Tulsa*, 124 F.4th 1251, 1263 (10th Cir. 2025).

Motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) constitute either "(1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002). Where, as here, the motion is a facial attack, the Court applies "a standard patterned on Rule 12(b)(6) and assume[s] the truthfulness of the facts alleged." *Utah Native Plant Soc'y v. United States Forest Serv.*, 923 F.3d 860, 865 (10th Cir. 2019) (internal quotations and citations omitted).

## III. Factual Allegations of the Complaint

Ms. Clark's Amended Complaint[3] [Doc. No. 11] includes 311 numbered paragraphs and spans forty-eight pages without exhibits. *See id.* The Court only summarizes the facts alleged, and it further discusses facts relevant to the legal issues presented below.

On March 11, 2020, Ms. Clark pled guilty to a drug trafficking charge in Case No. CF-2019-614 in Canadian County, Oklahoma. Am. Compl. [Doc. No. 11] ¶¶ 57-58. She received a seven-year suspended sentence except for an initial 114 days in the Canadian County Jail. *Id.* ¶ 58. On January 6, 2021, the Canadian County District Attorney filed an application to revoke Ms. Clark's suspended sentence, and a bench warrant for her arrest was issued the same date. *Id.* ¶ 60. The warrant was returned on February 25, 2021, and Ms. Clark posted bond on March 3, 2021. *Id.* ¶ 61.

---

[3] Although titled "First Amended Petition" the Court uses the nomenclature applicable in federal court.

Another bench warrant was issued as to Ms. Clark on March 8, 2021 based on a failure to appear on February 16, 2021. *Id.* ¶ 62. Pursuant to that warrant, Ms. Clark was arrested in Pottawatomie County on August 26, 2021. *See id.* ¶ 63. On August 31, 2021, either at the direction of Sheriff West or by volunteering, Mr. Loman went to Pottawatomie County to transfer Ms. Clark to the Canadian County Jail. *Id.* ¶¶ 69-70.

Mr. Loman picked up Ms. Clark the same day. *See id.* ¶ 80. He was not accompanied by any other officer, and he did not have a body or dash camera.[4] *Id.* ¶¶ 70-71. Mr. Loman placed Ms. Clark in the front seat of his vehicle. *Id.* ¶¶ 80-81. He then pulled across the street and parked his vehicle, stating that he needed to perform a search of Ms. Clark. *Id.* ¶¶ 83, 84. Mr. Loman proceeded to touch Ms. Clark's breasts and genitalia under the guise of a search, but a search was unnecessary and not done pursuant to official policy. *Id.* ¶¶ 85-87.

After a phone call with the Canadian County Sheriff's Office, Mr. Loman departed with Ms. Clark. *Id.* ¶¶ 88-91. Mr. Loman asked Ms. Clark if she was hungry or thirsty, and she stated that she wanted a Coke to drink. *Id.* ¶¶ 91-92. Mr. Loman stopped at a gas station and purchased Ms. Clark a Coke. *Id.* ¶¶ 94-95. After that stop, Mr. Loman began making comments that were sexually suggestive, controlling, and threatening. *Id.* ¶¶ 96. Mr. Loman then sexually harassed and assaulted Ms. Clark during the drive, touching her

---

[4] Ms. Clark alleges that Sheriff West had a pattern and practice of allowing male officers to transport female inmates without protective measures such as body or dash cameras, accompaniment by other officers or witnesses, or policies or procedures to document travel. *Id.* ¶ 72.

breasts, reaching down her pants and touching her, and unzipping his pants and touching his own genitals. *Id.* ¶¶ 98-105.

When the parties arrived in Canadian County, Mr. Loman exited the highway and drove down county roads that were not on the way to the jail. *Id.* ¶¶ 106-07. He parked the vehicle and then walked to the passenger side and removed Ms. Clark. *Id.* ¶¶ 108-09. Mr. Loman then "subject[ed] her to the act of forcible oral sodomy" and again stuck his hands down her pants and touched her genitalia. *Id.* ¶¶ 110-12. A car drove by, and Mr. Loman moved Ms. Clark back into the vehicle and drove away. *Id.* ¶¶ 111, 113. On the way to the jail, Mr. Loman threatened Ms. Clark with physical force, told her no one would believe her about the sexual assault, and he stated would make sure she would go to jail. *Id.* ¶ 114.

Ms. Clark was incarcerated at the Canadian County Jail from September 23, 2021 to November 19, 2021.[5] *Id.* ¶ 118. She did not suffer any physical injuries from the assault, and she was unaware she had any mental injury until she was diagnosed with PTSD while incarcerated at another facility, Mabel Bassett, in 2023. *Id.* ¶¶ 119, 122. Ms. Clark did not know whether the Sheriff's Office knew or should have known about Mr. Loman's conduct until news media reported on other incidents in late May of 2022. *Id.* ¶ 120.

Ms. Clark includes numerous allegations regarding sexual assaults of other victims by Mr. Loman and other deputies at the Canadian County Sheriff's Office. *See id.* ¶¶ 123-69, 183. She describes an alleged sexual assault by Loman of another detainee, Kaci Fox,

---

[5] She does not state whether she arrived at the Canadian County Jail on August 31, 2021, nor does she explain whether she was detained between August 31 and September 23. *See id.*

that occurred in April of 2022 during transport under circumstances similar to her own. *Id.* ¶¶ 53, 123-48. That alleged incident is the subject of criminal charges brought against Mr. Loman in the District Court of Jefferson County, Oklahoma, in case number CF-2022-52. *Id.* ¶¶ 127, 140-41.

Ms. Clark goes on to describe news stories about a Canadian County Deputy named Raven Benson who allegedly raped an inmate in jail. *Id.* ¶¶ 149-50. She states that this incident occurred between December 2021 and February 2022, but the allegations did not become public until 2022. *Id.* Ms. Clark also includes allegations regarding a July 2023 sexual assault of another detainee, Kristina Crist, by a Deputy named Wesley Hunter under factual circumstances similar to her own and those involving Ms. Fox. *Id.* ¶¶ 53, 152-69. Ms. Clark states that the incident involving Mr. Hunter is the subject of a federal criminal action in the United States District Court for the Eastern District of Oklahoma, Case No. CR-23-195. *Id.* ¶ 153.

Ms. Clark alleges Sheriff West has hired and retained multiple individuals despite allegations of sexual misconduct in connection with their employment, including some that were involved in misconduct he knew or should have known about. *Id.* ¶ 183. In addition to those incidents described above, Ms. Clark specifically lists examples of at least seven additional deputies employed by Sheriff West who were allegedly involved in one or more instances of sexual misconduct either before or during their employment by Sheriff West. *Id.* ¶¶ 183(a)-(g).

## IV. <u>Discussion</u>

### A. Claims Against Canadian County BOCC

Ms. Clark concedes her claims against Canadian County BOCC and Sheriff West in his official capacity are duplicative. *See* Resp. [Doc. No. 28] at 23-24. The parties disagree, however, as to which of those two parties should be dismissed. *See id.*; *see also* Mot. [Doc. No. 12] at 13-14. For the reasons that follow, the Court agrees with Sheriff West and Canadian County BOCC that dismissal of the BOCC is more appropriate.[6]

Under Oklahoma law, a county may be sued by naming the board of county commissioners or an appropriate county official. *See* 19 Okla. Stat. § 4. Ms. Clark's municipal liability claims center on alleged acts or omissions by individuals in the Sheriff's Office and at the jail, *see generally* Am. Compl. [Doc. No. 11], and Sheriff West is generally tasked with management of both. *See* 19 Okla. Stat. § 513 ("The sheriff shall have the charge and custody of the jail of his county. . . and shall keep such jail himself, or by his deputy or jailer, for whose acts he and his sureties shall be liable."); *see also id.* § 547(A) ("The sheriff shall be responsible for the official acts of the undersheriff and deputy sheriffs").

Accordingly, the Court finds Ms. Clark's municipal liability claim is more appropriately asserted against Sheriff West than the BOCC. *See Pack v. Jim*, No. 24-CV-42-JDR-JFJ, 2025 WL 2214564, at *6 (N.D. Okla. July 1, 2025) (finding a municipal liability claim was more appropriately asserted against the sheriff than the board of county

---

[6] Ms. Clark fails to develop an argument or cite any authority as to why the Canadian County BOCC should remain. *See* [Doc. No. 28] at 23-24.

commissioners for similar reasons).  For these reasons, Canadian County BOCC is dismissed as a party to this action.

### B.  Statute of Limitations for § 1983 Claims

"A hodgepodge of state and federal law governs the timeliness of claims under 42 U.S.C. § 1983." *Mondragon v. Thompson*, 519 F.3d 1078, 1082 (10th Cir. 2008).  The statute of limitations for a § 1983 claim "is dictated by the personal injury statute of limitations in the state in which the claim arose," which is two years for claims in Oklahoma.  *McCarty v. Gilchrist*, 646 F.3d 1281, 1289 (10th Cir. 2011) (citing *Wallace v. Kato,* 549 U.S. 384, 387 (2007) and 12 Okla. Stat. § 95(A)(3)).  Federal law governs when the claim accrues.  *Id.*  State law, on the other hand, generally governs tolling of the limitations period, except where federal law might also allow equitable tolling.  *See Mondragon*, 519 F.3d at 1082.  "It is proper to dismiss a claim on the pleadings based on the statute of limitations only if the affirmative defense appears plainly on the face of the complaint itself." *Ullery v. Bradley*, 949 F.3d 1282, 1288 (10th Cir. 2020).

Sheriff West and Mr. Loman argue Ms. Clark's § 1983 claims are based on the alleged sexual assault by Mr. Loman on August 31, 2021, therefore the two-year statute of limitations expired on August 31, 2023.  *See* [Doc. No. 12] at 7; [Doc. No. 13] at 4; *see also* Am. Compl. [Doc. No. 11] ¶¶ 69-114.  Ms. Clark filed this action on May 16, 2024. *See* Pet. [Doc. No. 1-2].  She had previously filed another state court action on December 22, 2023, *see* [Doc. No. 4-1], but Sheriff West and Mr. Loman contend Oklahoma's one-year savings statute has no application because that prior action was also untimely.

Ms. Clark raises numerous alternative arguments at to why her claims are not time barred.  *See* [Doc. No. 28] at 11-23.  She argues she did not discover her claim against Sheriff West until the news of the other alleged assaults first broke on May 16, 2022, or that her claims should be tolled through that date.  *Id.* at 12-14, 18-20.  She also asserts she had no physical injuries from the assault and was unaware of her mental health injuries until she was diagnosed with PTSD in 2023.  *Id.* at 8, 12, 18-20.  She similarly contends that the delayed mental health diagnoses implicates the discovery rule "and/or" tolling.  *Id.* at 12, 18, 22-23.[7]

Ms. Clark also contends her claims are premised on "ongoing" events during her time at the Canadian County Jail after the alleged assault in 2021 through an alleged transportation by the Sheriff's Office in 2024, therefore the accrual date is not apparent from the face of the Amended Complaint.  *Id.* at 15-17.  Finally, Ms. Clark argues for equitable tolling and tolling based on extraordinary circumstances.  [Doc. No 28] at 20-23.  The Court begins with the claims against Mr. Loman before proceeding to those against Sheriff West.

### i.  Section 1983 Claims Against Mr. Loman

Determining an accrual date must "begin[] with identifying 'the specific constitutional right' alleged to have been infringed." *Herrera v. City of Espanola*, 32 F.4th 980, 990 n.5 (10th Cir. 2022) (quoting *McDonough v. Smith*, 588 U.S. 109, 115 (2019)).

---

[7] In response to Mr. Loman's Motion, Ms. Clark incorporates portions of her argument made in her response to Sheriff West's Motion.  *See* [Doc. No. 29] at 19.  She does not incorporate the argument regarding discovery of her claims when the news regarding other sexual assaults was released on May 16, 2022, *see id.*, so the Court only considers that as to Sheriff West.

As noted, Ms. Clark brings a § 1983 claim against Mr. Loman pursuant to the Eighth or Fourteenth Amendments due to a "split" in authority on how an individual arrested on probation violations should be considered.[8]  *See* Am. Compl. [Doc. No. 11] ¶ 215.  The question of which constitutional right applies is further complicated by the fact that Ms. Clark also cites authority regarding the Fourth Amendment for this first claim.  *Id.* ¶¶ 219-220.  Finally, Ms. Clark also brings an equal protection claim against Mr. Loman, which the Court addresses after clarification of the applicable constitutional right for her first claim.  *Id.* at 35-38.

Courts generally "analyze sexual assault of an inmate as an excessive force claim." *Works v. Byers*, 128 F.4th 1156, 1163 (10th Cir. 2025).  "Excessive force claims can be maintained under the Fourth, Fifth, Eighth, or Fourteenth Amendment—all depending on where the defendant finds [her]self in the criminal justice system. . ." *Porro v. Barnes*, 624 F.3d 1322, 1325 (10th Cir. 2010).  The Fourth Amendment "pertains to the events leading up to and including an arrest of a citizen previously at liberty. . ." *Id.*  Individuals "already convicted of a crime who claim that their *punishments* involve excessive force must proceed under the more restrictive terms of the Eighth Amendment's 'cruel and unusual punishments' clause." *Id.* at 1325-26.  When the plaintiff is "somewhere between the two

---

[8] Ms. Clark also states she "was and has been held in custody awaiting hearings on both alleged probation violations and new charges." *Id.*  She does not identify those "new charges" in her Amended Complaint, nor does she include any factual allegations about when they were brought. *See generally id.*  In any event, her claims are based on the alleged sexual assault that occurred while she was being transported on probation violations, so that is the relevant legal status for purposes of these claims.

stools of an initial seizure and post-conviction punishment[,]" courts "turn to the due process clauses of the Fifth or Fourteenth Amendment. . ." *Id.* at 1326.

In *Berry v. City of Muskogee*, the Tenth Circuit found that the Eighth Amendment provided the governing analysis for claims for excessive force by an individual who had been convicted but was held awaiting sentencing because "that Amendment is the 'primary source of substantive protection to convicted prisoners[.]'" 900 F.2d 1489, 1494 (10th Cir. 1990). The Circuit explained: "[t]he critical juncture is conviction, either after trial or, as here, by plea, at which point the state acquires the power to punish and the Eighth Amendment is implicated." *Id.* at 1493 (also observing that detention for an inmate who is convicted but not yet sentenced is "primarily punitive, not solely prophylactic"). Consistent with other authority in the Tenth Circuit, the Court finds that the reasoning in *Berry* applies similarly to Ms. Clark's situation, and her claim for excessive force while detained on a probation violation should be considered under the Eighth Amendment. *See Kellum v. Bernalillo Cnty.*, 250 F. Supp. 3d 846, 850 (D.N.M. 2017).[9]

Generally, "it is 'the standard rule that accrual occurs when the plaintiff has a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'" *Herrera*, 32 F.4th at 990 (quoting *Wallace,* 549 U.S. at 388); *see also Vasquez v. Davis*, 882 F.3d 1270, 1276 (10th Cir. 2018) (same). "Since the injury in a § 1983 case is

---

[9] Nevertheless, under the general rules regarding accrual of § 1983 claims discussed below, the accrual date in this action would be the same whether Ms. Clark's excessive force claim is considered as one brought the Fourteenth Amendment. And the same is true even if her claim was considered under the Fourth Amendment. *See Johnson v. Johnson County Comm'n Bd.*, 925 F.2d 1299, 1301 (10th Cir. 1991) ("Claims arising out of police actions toward a criminal suspect . . . are presumed to have accrued when the actions actually occur.").

the violation of a constitutional right, such claims accrue 'when the plaintiff knows or should know that his or her constitutional rights have been violated.'" *Smith v. City of Enid*, 149 F.3d 1151, 1154 (10th Cir. 1998); *Price v. Philpot*, 420 F.3d 1158, 1162 (10th Cir. 2005) ("A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."(internal quotation marks and citation omitted)).

The incident that forms the basis for Ms. Clark's claims, and which is the basis for her injuries, occurred on August 31, 2021.  That is the accrual date for her excessive force claim because she knew or should have known her constitutional rights had been violated, and she could have filed suit and obtained relief at that time.  *See Smith*, 149 F.3d at 1154; *see also Gee v. Pacheco*, 627 F.3d 1178, 1189-90 (10th Cir. 2010) (finding a state prisoner's § 1983 action alleging prison officials violated the Eighth Amendment during his transportation between prisons accrued on the date of the incident); *see also Ullery*, 949 F.3d at 1288 (considering "specific dates when each alleged instance of sexual abuse occurred" for purposes of whether the plaintiff's Eighth Amendment claim was time barred, but finding the plaintiff plausibly alleged that the defendant "engaged in this conduct at least once, and possibly on several occasions, within the limitations period").[10]

---

[10] In response to Mr. Loman's Motion, Ms. Clark incorporates her argument about "ongoing constitutional violations" made in response to Sheriff West's Motion.  *See* [Doc. No. 29] at 19; *see also* Resp. [Doc. No. 28] at 15-17.  But none of the factual allegations she points to involve any conduct by Mr. Loman—they all pertain to acts or omissions by Sheriff West's office.  *See id.* at 16-17; *see also* Am. Compl. [Doc. No. 11] ¶¶ 41-43, 117, 213-14.  Indeed, the Amended Complaint does not include factual allegations regarding any interaction between Mr. Loman and Ms. Clark after November 19, 2021.  *See* [Doc. No. 11] ¶ 118 ("Plaintiff was incarcerated in Canadian County from September 23, 2021, through November 19, 2021 where she was subject to fear, force, and intimidation of silence by Loman.").  Accordingly, unlike in *Ullery*, Ms. Clark does not allege repeated instances of sexual assault, and the date of the incident upon which her excessive force claim is based is apparent on the face of the complaint.  *See* 949 F.3d at 1288.

As with her excessive force claim, Ms. Clark's equal protection claim centers on the alleged sexual assault by Mr. Loman. *See* Am. Compl. [Doc. No. 11] ¶¶ 243-255. She does not identify or otherwise allege any other actions by Mr. Loman she believes are relevant to an equal protection claim, nor does she argue a different accrual rule for that claim. Accordingly, August 31, 2021 is the relevant date for accrual of Ms. Clark's equal protection claim against Mr. Loman. *See Herrera*, 32 F.4th at 990 ("accrual occurs when the plaintiff has a complete and present cause of action,' that is, when 'the plaintiff can file suit and obtain relief.'"); *cf. Carpenter v. Vilsack*, No. 22-8079, 2023 WL 6810960, at *5 (10th Cir. Oct. 16, 2023), *cert. denied*, 144 S. Ct. 2524 (2024) ("In the equal protection context, an injury in fact occurs when actual unequal treatment occurs."); *City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010) (equal protection claim challenging school board election law accrued when the election was held and plaintiffs were unable to vote).

Ms. Clark's argument that she did not discover the mental injury associated with the incident until her PTSD diagnosis in 2023 does not alter the accrual date for her claims. Although she contends she was not physically injured from the assault, she does not dispute that she knew or should have known that her constitutional rights had been violated on August 31, 2021. *See Smith*, 149 F.3d at 1154; *see also Herrera*, 32 F.4th at 992; *Gross v. Samudio*, 630 F. App'x 772, 776 (10th Cir. 2015) ("The claim accrues when the constitutional injury occurs, 'not when the consequence of that constitutional injury . . . manifested itself.'" (quoting *Smith*, 149 F.3d at 1154)).

In other words, Ms. Clark "knew long before she filed suit all the facts necessary to sue and recover damages." *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1216 (10th

14

Cir. 2014) (rejecting an argument that § 1983 claims did not accrue until later because the plaintiff "did not realize the extent of her psychological injury until shortly before filing suit."); *see also Vasquez*, 882 F.3d at 1276 (finding an Eighth Amendment claim accrued once the plaintiff knew the defendants' actions "caused him substantial harm, even though the full extent of the injury is not then known or predictable." (internal quotation marks and citation omitted)); *Indus. Constructors Corp. v. U.S. Bureau of Reclamation*, 15 F.3d 963, 969 (10th Cir.1994) (A plaintiff "need not know the full extent of [her] injuries before the statute of limitations begins to run."). Accordingly, Ms. Clark's argument about discovery of her PTSD diagnosis in 2023 does not extend the accrual date for her claims. *See Varnell*, 756 F.3d at 1216.[11]

Ms. Clark alternatively argues that equitable tolling is warranted. [Doc. No. 28] at 20-22. "In general, Oklahoma permits the tolling of a statute of limitations in two circumstances." *Alexander*, 382 F.3d at 1217. The first circumstance is the existence of a legal disability, which has been applied in cases where a plaintiff's competency is impaired or where the plaintiff has not yet reached the age of majority. *Id.* The second is when

---

[11] Ms. Clark's argument regarding discovery of her mental health injury goes to accrual of her claim, which is governed by federal law. *Cf. Alexander v. Oklahoma*, 382 F.3d 1206, 1215 (10th Cir. 2004). (applying the "federal discovery rule" that provides "claims accrue and [t]he statute of limitations begins to run when the plaintiff knows or has reason to know of the existence and cause of the injury which is the basis of his action." (internal quotation marks and citation omitted)). Nevertheless, to the extent this discovery rule argument may also be considered as a tolling issue for which Oklahoma law governs, Sheriff West is correct that this argument is without merit in light of *Lovelace v. Keohane*. *See* 831 P.2d 624, 629-32 (Okla. 1994) (declining to apply the discovery rule where the plaintiff alleged she was not aware of the cause of her psychological injuries associated with sexual abuse during her childhood until about eighteen years later due to multiple personality disorder). Plaintiff only cites a general principle from *Lovelace* and makes no effort to distinguish its rationale or holding. *See* Resp. [Doc. No. 28] at 18-19.

"defendants engage in false, fraudulent or misleading conduct calculated to lull plaintiffs into sitting on their rights." *Id.* (internal quotation marks and citation omitted). Ms. Clark does not contend she had a legal disability, but she does argue Mr. Loman and Sheriff West engaged in false, fraudulent, and misleading conduct. [Doc. No. 28] at 20-22.[12]

Ms. Clark did not plead any factual allegations that suggest the defendants engaged in false, fraudulent, or misleading conduct that lulled her into sitting on her rights. *See Herrera*, 32 F.4th at 992 (if the claims are time barred, "the burden falls on [the plaintiff] to identify a theory that allows [her] to overcome the statutes of limitations and thereby render [her] claims timely."). In her Response, she includes a lengthy paragraph of contentions about efforts by the Sheriff's Office to silence victims, but she does not cite to any factual allegations in her Amended Complaint that align with those assertions, and the Court cannot search her Amended Complaint to develop that argument for her. *See* [Doc. No. 28] at 21. In any event, there are no factual allegations in the Amended Complaint that suggest either Defendant falsely, fraudulently, or misleadingly lulled Ms. Clark into sitting on her rights. *See generally* [Doc. No. 11]; *Breedlove v. Costner*, 405 F. App'x 338, 342 (10th Cir. 2010) (finding equitable tolling was not warranted where the plaintiff "has never claimed that he is incompetent or that Defendants engaged in false, fraudulent or

---

[12] Ms. Clark alternatively asserts that the Court should apply equitable estoppel, which applies where the plaintiff knows of their cause of action but delays filing suit because of the defendant's conduct. *See id.* at 20 n. 7. Although she summarizes the difference between equitable tolling and equitable estoppel, Ms. Clark fails to develop any legal argument as to equitable estoppel, and her argument relates to equitable tolling. *See id.* at 20-22. In any event, equitable estoppel is inapplicable: Ms. Clark does not describe any promise or similar conduct by either defendant, coupled with justifiable reliance by her. *See Thaxton v. Beneficial Mortg. Co. of Oklahoma*, 145 P.3d 124, 128 (Okla. Civ. App. 2006) ("The important elements of estoppel are Defendants' conduct and Plaintiffs' justifiable reliance thereon to their prejudice.").

misleading conduct calculated to lull him into sitting on his rights."); *see also Young v. Davis*, 554 F.3d 1254, 1258 (10th Cir. 2009) (tolling was not warranted because the plaintiff's claims "d[id] not fit within any of these circumstances."); *Calvert v. Swinford*, 382 P.3d 1028, 1033 (Okla. 2016) ("Exceptions to statutes of limitations are strictly construed and are not enlarged on consideration of apparent hardship or inconvenience.").

Finally, Ms. Clark argues extraordinary circumstances warrant equitable tolling. [Doc. No. 28] at 22. Generally, "equitable tolling may apply . . . when extraordinary circumstances make it impossible for the plaintiff to file his or her claims within the statutory period." *United States v. Clymore*, 245 F.3d 1195, 1199 (10th Cir. 2001). Again, however, Ms. Clark does not point to factual allegations in the complaint that align with the contentions in her response, and she offers no authority that supports her argument. [Doc. No. 28] at 21-22.[13]

Ms. Clark asserts that it "was not possible" to file her civil claims due to the culture of abuse, harassment, fear, intimidation, and retaliation at the Canadian County Jail, coupled with direct threats from Mr. Loman that he would "make sure" she went to jail if she failed to keep silent. Resp. [Doc. No. 28] at 22. As Sheriff West points out, however, Ms. Clark alleges she was "in the custody and care of Canadian County" when she filed

---

[13] Ms. Clark discusses *Alexander v. Oklahoma*, which considered tolling of claims based on the Tulsa race massacre. 382 F.3d at 1219. The *Alexander* court ultimately found tolling was not warranted, despite recognition that "in the immediate aftermath of the Riot and for several decades thereafter, extraordinary circumstances justified tolling . . ." *Id.* at 1219. The Circuit ultimately agreed with the district court that "the two required elements of information and access [were] satisfied" because the emergence of civil rights legislation in the 1960s gave the plaintiffs the ability to seek legal redress and the plaintiffs "neither allege[d] nor even impl[ied] that they were prohibited from accessing the courts in the 1970s, 1980s, or 1990s." *Id.* 1219-20.

this action. *See* Reply [Doc. No. 32] at 4-5; *see also* Am. Compl. [Doc. No. 11] ¶ 211. And Ms. Clark alleges that she was not incarcerated in the Canadian County Jail for some time after November 19, 2021. *See* [Doc. No. 11] ¶ 118. Accordingly, the record does not support the conclusion that the circumstances Ms. Clark identifies made it impossible for her to timely file her lawsuit.

For all these reasons, the Court finds that Ms. Clark's § 1983 claims against Mr. Loman are barred by the statute of limitations, and his Motion is GRANTED on that issue.

### ii. Claims Against Sheriff West

As noted, Ms. Clark brings § 1983 claims against Sheriff West for violation of equal protection, supervisory liability, and municipal liability. All three claims are generally based on an alleged policy of condoning, ratifying, or even encouraging a pervasive pattern of sexual assault by Canadian County officers. *See* Am. Compl. [Doc. No. 11] at 35-42. Regarding supervisory liability, Ms. Clark alleges Sheriff West "knew or reasonably should have known that his acts and/or failures to act would likely cause the constitutional injury that befell [her] because" he: endorsed, encouraged, or failed to discipline Mr. Loman's actions; continued to employ and allow Mr. Loman to transport female detainees despite prior instances of sexual misconduct; and failed to train or otherwise prevent Mr. Loman from engaging in sexual misconduct. *Id.* ¶¶ 259-67.

Similarly for municipal liability, Ms. Clark alleges that Sheriff West knowingly fosters an "unwritten policy or custom" of allowing or encouraging sexual misconduct toward inmates through a failure to appropriately train or discipline Officers to prevent it. *Id.* at ¶¶ 268-89. She alleges Sheriff West's acts and omissions with regard to her claims

for municipal and supervisory liability resulted in the deprivation of her constitutional rights under the "Fourth, Eighth, and Fouteenth Amendments." *Id.* ¶¶ 266, 288-89.

For her equal protection claim, Ms. Clark similarly alleges Sheriff West implemented policies and procedures for transporting detainees that afforded less protection to female detainees than male detainees. Am. Compl. [Doc. No. 11] ¶ 254.[14] She alleges Sheriff West knew about multiple sexual assaults against female inmates and did not change his policies or procedures, which let to "multiple additional individuals being assaulted at the Courthouse and in the custody of" the Sheriff's Office. *Id.* ¶ 257. Finally, she generically alleges she was injured as a result of Mr. Loman and Sheriff West's actions. *See id.* ¶ 258.

The Court finds that Ms. Clark's claims against Sheriff West likewise accrued on the date of the alleged incident: August 31, 2021.[15] As set forth, "[s]ince the injury in a § 1983 case is the violation of a constitutional right, such claims accrue 'when the plaintiff knows or should know that his or her constitutional rights have been violated.'" *Smith*, 149 F.3d at 1154; *Price*, 420 F.3d at 1162 ("A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action."). Consistent

---

[14] The policies and procedures Ms. Clark contends would have protected female detainees like her include: utilizing body and car cameras for deputies; requiring another female to be present for transport; utilizing GPS monitoring for deputies during transport; requiring disclosure of time, mileage, and other key data regarding arrival and departure; creating a work environment that allowed such conduct; hiring deputies without properly vetting their background; and failing to investigate allegations of inappropriate sexual behavior. *Id.* at 37.

[15] As it pertains to the limitations issue, Ms. Clark discusses all her §1983 claims collectively: she does not argue a different accrual date for one or more of those claims in particular. *See* Resp. [Doc. No. 28] at 11-18.

with her allegations, the injury for purposes of Ms. Clark's municipal or supervisory liability claims is the underlying constitutional violation: excessive force. *Cf. Lee v. Poudre Sch. Dist. R-1*, 135 F.4th 924, 934 (10th Cir. 2025) (a plaintiff must show that the municipal policy or custom "caused the plaintiff's *constitutional* injury." (emphasis added)); *see also Finch v. Rapp*, 38 F.4th 1234, 1244 (10th Cir. 2022) ("a plaintiff must show that the policy directly caused his constitutional injury"); *Trigalet v. City of Tulsa, Okla.*, 239 F.3d 1150, 1155–56 (10th Cir. 2001) ("[T]he City cannot be held liable where, as here, the Officers did not commit a constitutional violation.").[16]

Accordingly, the date of the alleged constitutional violation, August 31, 2021, is the governing date for accrual of Ms. Clark's claims against Sheriff West. *See Doe v. Bd. of Trs. of Sublette Cnty. Sch. Dist. No. 9*, No. 23-8001, 2024 WL 1085149, at *6 (10th Cir. Mar. 13, 2024) (applying the holding in *Varnell* that a claim for sexual assault "accrue[s] no later than the date of the last offense contact" and finding a deliberate indifference claim against a school board premised on the alleged sexual assault of a former student by a teacher was time barred); *Bauer v. City & Cnty. of Denver*, 642 F. App'x 920, 924 (10th Cir. 2016) (finding a municipal liability claim time barred because it was based on "the alleged cruel and unusual punishment during [plaintiff's] incarceration, manifested by deliberate indifference to his medical needs."). The same is true for Ms. Clark's equal protection claim, which centers on alleged policies and procedures by Sheriff West that

---

[16] Supervisory liability claims like Ms. Clark's are generally analyzed the same way. *See Burke v. Regalado*, 935 F.3d 960, 999 (10th Cir. 2019) (finding the elements for supervisory and municipal liability were the same where the plaintiff's supervisory liability claims were premised on the defendant-sheriff "maintaining a policy or custom that resulted in the underlying violation").

caused or allowed sexual assault to occur.  *See* Am. Compl. [Doc. No. 11] ¶¶ 254-58; *see also Bd. of Trs. of Sublette Cnty. Sch. Dist. No. 9*, 2024 WL 1085149, at *6-7 (affirming the district court's conclusion that claims against the school board were time barred because the last incident of assault occurred outside the limitations period, including an equal protection claim based on sexual harassment).[17]

Ms. Clark contends that her claims against Sheriff West did not accrue until May 16, 2022, when news stories regarding other sexual assaults were first published.  Resp. [Doc. No. 28] at 9-10, 12-15.  She asserts she could not have discovered her causes of action against Sheriff West until then.  *Id.* at 18-20.  This argument is without merit under the authority discussed above: the relevant inquiry for accrual of these claims is the date on which the constitutional violation occurred: i.e., when Ms. Clark knew or should have known of the violation and accompanying injuries.  *See Bauer*, 642 F. App'x at 924; *cf. Price*, 420 F.3d at 1162 ("it is not necessary that a claimant know all of the evidence ultimately relied on for the cause of action to accrue."); *Baker v. Bd. of Regents*, 991 F.2d 628, 632 (10th Cir. 1993) (same).  On this issue, the Court finds persuasive the weight of authority from other circuits rejecting a "delayed accrual" discovery rule for municipal liability claims due to their own precedent that focuses on the date of the harm similar to that from the Tenth Circuit discussed above.  *See King-White v. Humble Indep. Sch. Dist.*, 803 F.3d 754, 763 (5th Cir. 2015) ("We . . . decline to change our well-settled accrual

---

[17] As indicated above, Ms. Clark does not argue a different accrual date for the equal protection claim, and that claim against Sheriff West is fundamentally based on the same facts (policies that give rise to a heightened risk of sexual assault) and the same underlying harm (the alleged sexual assault by Mr. Loman).

rules" to adopt a standard that municipal liability claims do not accrue until it is or should be clear that the harm was the result of a policy or custom, as contemplated by the Second Circuit in *Pinaud v. County of Suffolk*, 52 F.3d 1139 (2d Cir. 1995)); *Tengood v. City of Philadelphia*, 529 F. App'x 204, 210 (3d Cir. 2013) (finding "no basis in [Third Circuit] precedent for applying such a 'delayed accrual' theory"); *Lawson v. Rochester City Sch. Dist.*, 446 F. App'x 327, 329 (2d Cir. 2011) (declining to follow *Pinaud* because that discussion was "demonstrably dictum" and other Second Circuit precedent provides for accrual when "the plaintiff becomes aware that [she] is suffering from a wrong for which damages may be recovered. . ." (internal quotation marks and citations omitted)).  For all these reasons, the Court finds Ms. Clark's claims against Sheriff West accrued on the date of the alleged constitutional violation by Mr. Loman, August 31, 2021.[18]

Nevertheless, Ms. Clark also generically asserts throughout her Responses that her § 1983 claims are based on "ongoing constitutional violations."  *See* Resp. [Doc. No. 28] at 15-17.  In support, she references the following allegations from her Amended Complaint: (1) she was transported by male deputies after the initial assault and without protective measures taken; (2) she was "retaliated against, denied privileges, and punished" by Sheriff West's Office for complaining of those transportation circumstances; (3) the Sheriff's Office disregarded her allegations of sexual assault and demeaned and harassed her, making her detention "intentionally hostile, demeaning, and scary"; (4) Sheriff West

---

[18]  Ms. Clark makes the same argument regarding discovery of her PTSD diagnosis in 2023, but that argument is without merit under *Varnell* and for additional the reasons set forth in the Court's discussion of her claims against Mr. Loman.  And for all the reasons previously set forth, the Court likewise finds Ms. Clark has not shown equitable tolling is appropriate.

refuses to transport her to another facility where she would be safe; (5) Sheriff West has refused to provide her medication for PTSD, exposing her to severe illness or death; and (6) Sheriff West refuses to properly protect inmates during transportation. *See id.* at 16-17; *see also* Am. Compl. [Doc. No. 11] ¶¶ 41-43-117-213-14.[19]

This last argument fails for numerous reasons. First, Ms. Clark cites no legal authority and otherwise makes no effort to develop an argument regarding those allegations. She does not connect them to any claim against any party, nor does she explain under what authority they may be relevant as it pertains to the statute of limitations such as the continuing or repeated violation doctrines. Accordingly, she has waived any contention on this issue. *See Hardeman v. City of Albuquerque*, 377 F.3d 1106, 1122 (10th Cir. 2004) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks and citation omitted)). Ms. Clark is represented by counsel, and the Court cannot speculate as to which constitutional claims these factual allegations may relate to where she has not made that connection.

Even if considered, these allegations do not affect the accrual date for any of Ms. Clark's claims. The second and third group of allegations listed above are conclusory and not entitled to presumption of truth. *Iqbal*, 556 U.S. at 678 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). The fifth allegation

---

[19] As noted, none of these factual allegations pertain to Mr. Loman, so the Court considers these allegations of ongoing constitutional violations only with respect to Sheriff West.

regarding Sheriff West refusing to provide her PTSD medication could potentially be relevant to an Eighth Amendment claim for denial of medical care, but Ms. Clark did not bring such a claim. *See* generally Am. Compl. [Doc. No. 11].

That leaves only her first, fourth, and sixth allegations, but none of these mention or otherwise involve any injury or harm, nor are they connected to any other injury or harm alleged in the complaint. *See id.* ¶¶ 41-42, 213.[20]  Accordingly, even if considered, Ms. Clark has not shown that either the continuing violation doctrine or the repeated violation doctrine have any application to the allegations she references. *See Herrera*, 32 F.4th at 998, 1000 (finding "the continuing violation doctrine—that a series of actions eventually cumulate to give rise to a single wrong—is not applicable" because "the initial [constitutional violation] was a discrete act capable of giving rise to [the plaintiffs'] claims"); *see also id.* at 995 (explaining the repeated violation doctrine "allows recovery for only that part of the injury the plaintiff suffered during the limitations period").

For all these reasons, the Court finds Ms. Clark's § 1983 claims against Sheriff West are time barred, and his Motion is GRANTED.[21]  Accordingly, the Court need not address Sheriff West's arguments regarding qualified immunity.

---

[20] It does not appear that the sixth allegation regarding Sheriff West "refusing to properly protect inmates in the transportation of the Department" even pertains to Ms. Clark. *See id.* ¶ 213(c).

[21] In reaching this determination, the Court echoes the observation in *Alexander* that although no legal avenue exists through which Ms. Clark can bring her § 1983 claims, it "take[s] no great comfort in that conclusion." 382 F.3d at 1220. "It goes without saying that statutes of limitations often make it impossible to enforce what were otherwise perfectly valid claims. But that is their very purpose, and they remain as ubiquitous as the statutory rights or other rights to which they are attached or are applicable." *Id.* (quoting *United States v. Kubrick*, 444 U.S. 111, 125 (1979)).

**C. Claims Under the Trafficking Victims Protection Reauthorization Act (TVPRA)**

Sheriff West and Mr. Loman argue for dismissal of Ms. Clark's claim based on the TVPRA, 18 U.S.C. § 1591(a).  As relevant here, the TVPRA makes it a crime to knowingly transport "or solicit[] by any means" a person knowing "that means of force, threats of force, fraud, coercion . . . or any combination of such means will be used to cause the person to engage in a commercial sex act. . ."  *Id.* § 1591(a)(1).  It also encompasses an individual who knowingly "benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1). . ."  *Id.* at § 1591(a)(2).  A "commercial sex act" is defined as "any sex act, on account of which anything of value is given to or received by any person."  *Id.* § 1591(e)(3).[22]

Sheriff West and Mr. Loman assert that the facts alleged do not involve a "commercial sex act" as defined in the TVPRA.  *See* West Mot. [Doc. No. 12] at 29; *see also* Loman Mot. [Doc. No. 13] at 5.  The Court agrees.  Ms. Clark generically alleges Mr. Loman "provided or promised [her] something of value in exchange for the sex acts performed" in her Amended Complaint, but this is a legal conclusion simply rephrasing the definition of "commercial sex act."  *See* Am. Compl. [Doc. No. 11] ¶ 305; *see also Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (Courts "disregard conclusory statements and look only to whether the remaining, factual allegations plausibly

---

[22] The TVPRA includes a section on civil relief that provides a victim may bring a civil action against the perpetrator or "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter. . ." 18 U.S.C. § 1595(a).

suggest the defendant is liable."); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Ms. Clark argues in her Response that she did allege Mr. Loman promised or provided things of value in relation to a sex act, namely: (1) he asked the her if she was hungry or thirsty; (2) he purchased her a Coke; (3) he offered to take her home or "wherever she wanted to go" if the Sheriff did not want her transported; (4) he gave her $100 to pay her bondsman; (5) he allowed another victim, Kaci Fox, to have a cigarette right before he sexually assaulted her; and (6) another sheriff deputy, Wesley Hunter, bought food for a female detainee as payment for sex during a transport. *See* Resp. [Doc. No. 28] at 37.  This argument is without merit.[23]

None of the allegations Ms. Clark cites to include any reference to Mr. Loman giving or offering her $100.00 for any reason. *See* Am. Compl. [Doc. No. 11] ¶¶ 88, 91-95, 134, 164.  Indeed, Ms. Clark does not allege anywhere in the Amended Complaint that Mr. Loman gave Ms. Clark $100.00 for any purpose. *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) ("Generally, the sufficiency of a complaint must rest on its contents alone."); *Earles v. Cleveland*, 418 F. Supp. 3d 879, 892 n.3 (W.D. Okla. 2019), *aff'd*, 825 F. App'x 544 (10th Cir. 2020) (disregarding factual assertions that were "beyond the scope of Plaintiff's First Amended Complaint" because a "plaintiff may not effectively amend

---

[23] The first, third, fifth, and sixth contention merit little discussion.  Ms. Clark wholly fails to explain how the last two allegations regarding actions in relation to other alleged victims affects the analysis of her claim.  *See id.*   Nor does she explain how Mr. Loman asking her if she was hungry or thirsty (or stating he would take her wherever she wanted to go) qualifies as something "of value" that was "given to or received by any person." *See* 18 U.S.C. § 1591(e)(3).

[her] Complaint by alleging new facts in [her] response to a motion to dismiss." (internal quotation marks and citation omitted)).

Finally, as to the allegation regarding Mr. Loman purchasing her a Coke, Ms. Clark does not allege facts that suggest the Coke was given "on account of" any sex act as required under the TVPRA, nor does she otherwise allege a sufficient connection between those two events. *See Ramsbottom v. Ashton*, No. 3:21-CV-00272, 2024 WL 4993391, at *4 (M.D. Tenn. Dec. 5, 2024) ("Courts have . . . held that 'on account of,' as used in § 1591, means 'because of' and requires a causal connection between the sex act and the conveyance of a thing of value." (collecting cases)); *United States v. Raniere*, 55 F.4th 354, 365 (2d Cir. 2022) ("we interpret the statutory language in Section 1591(e)(3) to require a causal connection between the sexual act and the giving or receiving of anything of value."). Accordingly, the Court finds Ms. Clark fails to state a plausible claim for violation of the TVPRA, and both Sheriff West and Mr. Loman's motions are GRANTED as to that claim.

## V.    Supplemental Jurisdiction

Upon dismissal of Ms. Clark's federal claims under § 1983 and the TVPRA, only her state law claims remain. Pursuant to 28 U.S.C. 1367(c), the Court declines to exercise supplemental jurisdiction over the remaining state law claims brought by Ms. Clark. *See Barnett v. Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C.*, 956 F.3d 1228, 1238 (10th Cir. 2020) ("The Supreme Court has encouraged the practice of dismissing state claims . . . when the federal claims to which they are supplemental have dropped out before trial."); *see also Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1314 (10th Cir. 2021)

("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims." (quoting *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011))).

Under these circumstances, "[t]he district court ha[s] discretion either to remand the claims to the state court or to dismiss them." *Thompson v. City of Shawnee*, 464 F. App'x 720, 726 (10th Cir. 2012) (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 354, 357 (1988)). In the interest of judicial economy and to avoid any undue prejudice to the parties, the Court finds remand is appropriate.

## VI.    <u>Conclusion</u>

IT IS THEREFORE ORDERED that Sheriff West's Motion to Dismiss [Doc. No. 12] and Mr. Loman's Motion to Dismiss [Doc. No. 13] are GRANTED as set forth above. Ms. Clark's claims against Sheriff West and Mr. Loman under 42 U.S.C. § 1983 are dismissed with prejudice, and Ms. Clark's claims under the TVPRA, 18 U.S.C. § 1591(a), are dismissed without prejudice.

IT IS FURTHER ORDERED that the Court declines to exercise supplemental jurisdiction over Ms. Clark's state law claims pursuant to 28 U.S.C. § 1367(c), and those claims are remanded to the District Court of Canadian County, State of Oklahoma. The Clerk of Court is directed to take all actions necessary to effect the remand of the remaining state law claims to the District Court of Canadian County, State of Oklahoma.

IT IS SO ORDERED this 30th day of September, 2025.

_____
SCOTT L. PALK
UNITED STATES DISTRICT JUDGE